## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THOMAS EMORY STEGALL,

      Plaintiff,

v.                                 CV 10-1262 RB/WPL

BERNALILLO COUNTY METROPOLITAN
DETENTION CENTER, et al.,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Thomas Emory Stegall brought this lawsuit while incarcerated at the Bernalillo County Metropolitan Detention Center ("MDC") alleging violations of his First, Eighth, and Fourteenth Amendment rights by numerous individuals. (Doc. 1; Doc. 4.) Ron Torres, Tommy Trujillo, and Augustine Stanley (collectively, "Defendants") have now filed a *Martinez* report (Doc. 50) and a Motion for Summary Judgment (Doc. 51). Stegall filed a single response to the report and motion (Doc. 60), and Defendants filed substantially similar replies (Doc. 63; Doc. 64). This case was referred to me to render proposed findings and a recommended disposition. (Doc. 3.) Having carefully reviewed the pleadings and the relevant law, I find that Stegall has failed to exhaust his administrative remedies and recommend that his claims be dismissed with prejudice.

### BACKGROUND

Stegall's claims arise from incidents during a period of incarceration at MDC from November of 2010 through early 2011. Rarely are the charges that led to an inmate's incarceration relevant to a lawsuit under 42 U.S.C. § 1983; in Stegall's case, though, the two are

intimately linked. In the summer of 2010, Stegall was charged with and pled guilty to forging checks using MDC's checking account information. (Doc. 50 at 6; Doc. 50 Ex. L at 9-13, 20-21.) He found an MDC check, allegedly on a sidewalk in downtown Albuquerque, and used the checking account number and routing number to make false checks, which he wrote out to various stores and individuals. (Doc. 50 at 5; Doc. 50 Ex. A at 22; Doc. 50 Ex. B at 3.) Following the original charge and conviction, Stegall was released, at which point he again made and used forged checks with MDC's routing and account numbers. (Doc. 50 at 14-15; Doc. 50 Ex. C at 9-10; Doc. 50 Ex. L at 23-29, 141.)

While awaiting the resolution of the second set of forgery charges, Stegall was placed in MDC. (Doc. 50 at 15; Doc. 50 Ex. C at 10.) It is undisputed that MDC officials refused to allow Stegall to place money in his inmate account, which is used to pay for medical co-payments, fines for destroyed property, and purchases from the commissary. (Doc. 50 at 9-10; Doc. 50 Ex. C at 5.) According to MDC personnel, this determination was made to prevent Stegall from obtaining MDC's routing and account numbers upon his release. (Doc. 50 Ex. C at 5-7; Doc. 50 Ex. D at 2-4; Doc. 50 Ex. E at 7-12.) If Stegall carried a balance in his account upon release, he would receive a check from MDC; that check would inevitably include those numbers, thus subjecting MDC to further risk of forgery. (Doc. 50 at 10; Doc. 50 Ex. C at 5-6; Doc. 50 Ex. D at 2; Doc. 50 Ex. M at 4.)

Stegall initiated this suit in December 2010 by filing a *pro se* complaint with this Court. (Doc. 1.) After reviewing Stegall's complaint and four subsequent motions to amend, the Court dismissed all defendants that were not affirmatively linked to an alleged violation, treated Stegall's first motion to amend (Doc. 4) as a supplement to his complaint, and denied Stegall's second, third and fourth motions to amend. (Doc. 15.)

The first of Stegall's remaining claims is that, in denying him the ability to have money placed in his account or removing money from his account without any process, Defendants violated his rights. (Doc. 1 at 8-9, 12; Doc. 4 at 3-4.) Second, he argues that Defendants denied him visitation with his friend, George Valdez, on December 23, 2010 in retaliation for his charges and without due process.[1] (Doc. 1 at 10.) Third, he asserts that Stanley denied him access to his legal property on December 23, 2010. (*Id.* at 11.) Finally, he claims that his legal calls were improperly monitored, violating the attorney-client privilege. (Doc. 4 at 5.) As relief for these asserted violations, Stegall requests compensatory damages in the amount of $140,000 and punitive damages of $1,200,000.[2] (Doc. 1 at 7.)

On March 30, 2012, the Defendants filed their *Martinez* report and a motion for summary judgment.[3] (Doc. 50; Doc. 51.) The report, motion, and responsive pleadings are now before me.

### STANDARD OF REVIEW

The court should grant summary judgment only when the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted). A *Martinez* report is also treated as an affidavit. *Id.* (citation omitted). A court cannot resolve material disputed factual issues by accepting a *Martinez* report's factual findings

---

[1] In support of this claim, Stegall amended his factual allegations, asserting that he was permitted a visit with Valdez on January 3, 2011 after posted visiting hours and immediately following a phone call with an outside law firm. (Doc. 4 at 3.)

[2] Stegall also requested immediate removal from MDCC. (Doc. 1 at 7.) This Court previously denied his request for emergency injunctive relief. (Doc. 13.) Stegall has since been released from MDC custody and is currently on parole and housed at the Men's Recovery House, so any claim for injunctive relief is now moot. (*See* Doc. 56.)

[3] The Court notes and appreciates the thorough research and documentation that Defendants included in their *Martinez* report and motion for summary judgment.

when they are in conflict with pleadings or affidavits. *Id.* at 1109 (citations omitted). However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citations omitted); *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1237 (10th Cir. 2004) (quotation omitted).

Because Stegall proceeds *pro se*, I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall*, 935 F.2d at 1110). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation and alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

### ANALYSIS

Before bringing a lawsuit regarding any aspect of prison life, the Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all administrative remedies that are available within the facility. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhausting administrative remedies means that the prisoner completes the grievance process, including pursuing all available administrative appeals, unless all available relief is obtained earlier in the process. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004), *abrogated on other grounds by Jones v. Bock,* 549 U.S. 199 (2007); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). A remedy is "available" if it is "capable of use for the

accomplishment of a purpose." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (quoting *Booth v. Churner,* 532 U.S. 731, 737 (2001)).

This requirement serves several purposes. First, it enables the complaint to be resolved by prison officials without the need for court intervention. *Ross*, 365 F.3d at 1184 (citing *Porter*, 534 U.S. at 525). Next, it filters out frivolous claims. *Id.* (citation omitted). Finally, it creates an administrative record that aids in the court's review of a case before it. *Id.* (citation omitted). However, these benefits can only be realized "if the prison grievance system is given a fair opportunity to consider the grievance." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 93 (2006)). For that reason, inmates must complete the entire review process in accord with the rules that are defined by the prison grievance process itself. *Id.* (quoting *Jones,* 549 U.S. at 218).

Failure to exhaust administrative remedies is an affirmative defense and not a pleading requirement. *Jones,* 549 U.S. at 212. Consequently, Defendants bear the burden of proving that Stegall did not utilize the available administrative remedies. *See Tuckel*, 660 F.3d at 1254 (citation omitted). Once Defendants satisfy their burden, though, the onus falls to Stegall to specifically show that either administrative remedies were exhausted or administrative remedies were unavailable for each alleged violation. *See id.*

Here, Defendants asserted failure to exhaust as a defense in their motion for summary judgment. (Doc. 51 at 4-7.) They provided the sole grievance filed by Stegall during his incarceration at MDC, MDC's grievance policy, the handbook provided to inmates that includes information about the grievance policy, an affidavit by records custodian Olivia Mora confirming that Stegall filed just one grievance at MDC, and an affidavit by Stanley explaining the difference between formal grievances and informal information requests. (Doc. 50 Ex. I at 1-

3; Doc. 50 Ex. K at 1-2; Doc. 50 Ex. L at 192; Doc. 50 Ex. M at 26-30; Doc. 50 Ex. N at 8, 30-31.) Stegall responded by asserting that his submitted complaints about the alleged violations, written on the "Inmate Request Information Form," went unanswered or were denied. (Doc. 60 at 3, 6; *see also* Doc. 1 at 15-22; Doc. 4 at 2, 10-14.)

MDC has a grievance policy in place. The policy allows an aggrieved inmate to seek formal review of complaints related his confinement when those complaints are not resolved informally with staff. (Doc. 50 Ex. M at 26.) In order to grieve an issue, an inmate must request a grievance form from the Grievance Classification Specialist, who comes to each housing unit at least twice a week, and complete the form while the Specialist is there. (*Id.* at 27-28.) The grievance form is labeled "MDC-5." (*Id.* at 27.) After the form is submitted to the Specialist, the Specialist determines whether the issue is grievable or not. (*Id.* at 28.) The form must be submitted within ten days of the alleged incident. (*Id.*) Assuming that the complaint is deemed grievable, it is sent to the appropriate division manager, who must respond to the grievance within ten working days of receipt. (*Id.* at 29.) The grievance is then returned to the inmate through the inmate's Case Manager. (*Id.*) Once the grievance is returned to the inmate, MDC policy allows for one tier of appeal. (*Id.* at 30.) The inmate must initiate the process, which is achieved by requesting and completing an appeal form from the Case Manager. (*Id.*) A ruling must be made by the Deputy Chief within five working dates of receipt, and his decision is final. (*Id.*)

While no formal policy addressing the information request procedure, as opposed to the grievance process, is available to the Court, Stanley has provided an affidavit explaining the distinctions between the two. (*See* Doc. 50 Ex. I.) He identified the request for information process as an informal one, with forms readily available in the housing unit that can be turned in

to any corrections officer, caseworker or other staff member. (*Id.* at 1-2.) He clarified that a request for information is not an informal grievance but rather an entirely separate process. (*Id.*) Unlike grievances, requests for information do not receive a number and cannot be tracked. (*Id.* at 2.) They are merely given to the person deemed most able to respond to the request, and they are answered in writing, verbally, or by taking some action. (*Id.*)

Inmates are advised of the grievance policy through the inmate handbook, though the explanation is somewhat unclear. According to the handbook, the MDC-5 form, or Grievance/Information/Request form, is only available from the Grievance Classification Specialist. (Doc. 50 Ex. N at 8.) The handbook, like the policy, states that the Specialist will visit each housing unit twice a week to provide and collect forms and to meet with inmates to discuss the criteria for grievances and requests. (*Id.*) It states that "Grievance/Information Requests" are filled out during the meeting with the Specialist. (*Id.*) In the handbook, the sole distinction that is made between grievances and information requests is that grievances must be filed within ten working days of the incident; if not, the issue "becomes an informational" one. (*Id.*) The importance of grievances is stressed later in the handbook, where it discusses the *McClendon* lawsuit and clarifies that an inmate's first step after a perceived civil rights violation is to file a grievance, follow the grievance process, and wait at least ten working days for a response to the grievance. (*Id.* at 30-31.)

Defendants suggest that Stegall's understanding of the grievance system is evidenced by the fact that he completed a grievance at MDC on August 24, 2010. (Doc. 51 at 6-7.) I find that argument unpersuasive, primarily because the form used by Stegall in August 2010 had check boxes for either grievance or information/request, and Stegall checked neither box. (*See* Doc. 50 Ex. L at 192.) Thus, this does not demonstrate that he was aware of the difference between a

grievance and a request for information. Even if he was, the forms that he used in December 2010 and January 2011, while labeled "Inmate Request Information Form," indicated that they were form number MDC-5, the same form number as that of a grievance according to MDC's grievance policy. (*Compare* Doc. 1 at 15, *with* Doc. 50 Ex. M at 27.)

Despite the confusion in MDC's inmate handbook and regardless of Stegall's knowledge of the process, Defendants have proven that there was a system for grievances at MDC and that Stegall failed to file a single grievance regarding the claims that he has raised in this lawsuit. Accordingly, they have met their burden to demonstrate that Stegall's claims were not exhausted as required by the PLRA.

In attempting to meet his burden of showing that administrative remedies were exhausted or were unavailable, Stegall merely states that his requests for information "went unanswered." (Doc. 60 at 3; *see also id.* at 4.) In his original complaint, Stegall also stated that his grievances were not accepted and asserted that MDC's grievance procedure is poor. (Doc. 1 at 6.) He does not discuss grievances in the supplement to his complaint. (*See* Doc. 4.) These conclusory assertions do not create a genuine issue of material fact as to whether Stegall employed the grievance process or as to whether the grievance process was unavailable to him. Moreover, the timing of Stegall's complaint and supplemental complaint belie any effort to redress his claims through MDC's administrative procedures. He finalized his complaint on December 26, 2010, and he completed all of his requests for information, with one exception, between December 23 and 26.[4] (*See* Doc. 1 at 15-22, 25.) Though the supplement is somewhat better, Stegall finalized that pleading on January 16, 2011 and wrote the requests for information, again with one

---

[4] The complaint was not received and filed by the Court until December 30, 2010.

exception, between January 4 and 13.[5] (Doc. 4 at 2, 10-14.) Even if these were grievances, Stegall did not allow sufficient time for MDC officials to respond before coming to the Court with his complaint, aside from the two noted exceptions. Stegall has not met his burden to demonstrate that he satisfied or was unable to satisfy the PLRA's exhaustion requirement.

Because there is no genuine issue of fact as to whether Stegall's claims were exhausted, and because unexhausted claims cannot be brought in court, Stegall may not proceed with this lawsuit challenging the conditions of his confinement. *See Thomas*, 609 F.3d at 1117 (quoting *Jones*, 549 U.S. at 211). I find that Stegall's claims are unexhausted and recommend that his complaint and the supplement thereto be dismissed.

The sole remaining issue, then, is whether the dismissal should operate as a dismissal with or without prejudice. As a general rule, a dismissal for failure to exhaust should be without prejudice. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (citing *Fitzgerald*, 403 F.3d at 1139). This rule recognizes that "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw." *Fitzgerald*, 403 F.3d at 1139 (quoting *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003), *abrogated on other grounds by Jones*, 549 U.S. 199). However, where the time frame for recourse to administrative remedies has expired, thereby barring the inmate from pursuing them, the dismissal should be with prejudice. *Id.* at 1140. This is because an inmate "may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them." *Thomas*, 609 F.3d at 1118 (quoting *Jernigan*, 304 F.3d at 1033).

In this case, MDC policy only allows for grievances to be filed up to ten days after the date of the incident or situation at issue. It is therefore clear that the time for filing a grievance on

---

[5] The motion to amend was not received and filed by the Court until January 20, 2011.

Stegall's claims has long passed, rendering all issues raised by Stegall non-grievable. Accordingly, I recommend that the dismissal of Stegall's complaint be with prejudice.

RECOMMENDATION

For the foregoing reasons, I find that Stegall has failed to exhaust his administrative remedies, as required by the PLRA, and that he is now barred from pursuing those remedies. Consequently, I recommend that Defendants' Motion for Summary Judgment (Doc. 51) be granted and that Stegall's complaint (Doc. 1; Doc. 4) be dismissed with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

10